IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                       No. CR08-4087

JESUS PALOMAREZ,             TRANSCRIPT OF
                                  SENTENCING

        Defendant.
_____/

        The Sentencing held before the Honorable Mark W. Bennett, Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, July 7, 2009, commencing at 3:02 p.m.

APPEARANCES

For the Plaintiff:       JOHN H. LAMMERS, ESQ.
                      Assistant United States Attorney
                      Terra Centre - Suite 670
                      600 Fourth Street
                      Sioux City, IA  51101

For the Defendant:      ROBERT A. WICHSER, ESQ.
                      Assistant Federal Defender
                      Suite 400
                      701 Pierce Street
                      Sioux City, IA  51101

Also present:           Shane Moore, U.S. Probation

Reported by:            Shelly Semmler, RMR, CRR
                      320 Sixth Street
                      Sioux City, IA  51101
                      (712) 233-3846

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 1 of 33

1        THE COURT:  Thank you.  Please be seated.  Good

2   afternoon.  This is United States versus Jesus Palomarez,

3   Criminal Number 08-4087.  The defendant's personally present

4   represented by Robert Wichser.  And the U.S. Attorney's Office

5   is represented by Assistant U.S. Attorney Jack Lammers.  And

6   we're here for sentencing.

7        Mr. Wichser, have you had a full, fair, and complete

8   opportunity to review the presentence report with your client?

9        MR. WICHSER:  Yes, Your Honor.

10        THE COURT:  And United States Probation Office scored

11   this as a -- Count 1, total offense level 31, criminal history

12   category 6.  Count 2 is a 60-month consecutive sentence.  And

13   because of the application of the career criminal guideline, the

14   guideline range is 262 to 327 months, but that includes the

15   60-month consecutive sentence on Count 1.  So if I were to give

16   a guideline sentence, the lowest guideline sentence I could give

17   would be 202 months on Count 1 and 60 months on Count 2.  And

18   the Count 2 60-month sentence would be consecutive to the 202

19   months on Count 1.  Short of a departure or variance, that would

20   be the lowest guideline sentence that I could give.

21        MR. WICHSER:  Yes, if you accept the scoring of the

22   career offender, yes, Your Honor.

23        THE COURT:  Well, my understanding is you haven't

24   objected to the career offender.  You've objected to the fact

25   that the criminal history scoring of 31 substantially

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 2 of 33

1 underrepresents -- I'm sorry, substantially overrepresents the

2 defendant's criminal history, and then you want me to do a

3 variance based on the Spears/Kimbrough type of analysis that

4 because there allegedly is no empirical evidence supporting the

5 career criminal guideline that I don't have to give it as much

6 weight.

7 MR. WICHSER: Correct.

8 THE COURT: Or I can give it whatever weight I want.

9 MR. WICHSER: That's absolutely the argument in a

10 nutshell, yes, Your Honor.

11 THE COURT: Okay. Mr. Lammers, do you agree with

12 those guideline calculations?

13 MR. LAMMERS: Yes.

14 THE COURT: Okay. And are we actually going to take

15 testimony from Mr. Rogers?

16 MR. WICHSER: Yes, Your Honor. That will be by

17 telephone with the consent of the parties, and that testimony is

18 directed to the variance issue.

19 THE COURT: Okay. And it's -- his report isn't good

20 enough? Is he going to testify beyond the scope of the report?

21 MR. WICHSER: No, he's not, Your Honor. He's not

22 going to testify beyond the scope of the report.

23 THE COURT: Well, I mean, I'll be glad to take his

24 testimony. I've been listening to duplicative testimony all day

25 in a civil case, so there's nothing new. But I've read his

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM Document 84 Filed 07/16/09 Page 3 of 33

1    report.  I'm totally familiar with Dr. Rogers.  You want to call

2    him as a witness, I'll be glad to do it telephonically.

3                MR. WICHSER:  Well, if I could have a moment to confer

4    with my client, that may obviate --

5                THE COURT:  Well, let me see.  Do you have a need to

6    cross-examine him?

7                MR. LAMMERS:  No.

8                THE COURT:  Okay.  So you can call him if you want to.

9                MR. WICHSER:  May I have one moment, Judge?

10               THE COURT:  Sure.

11               MR. LAMMERS:  Sorry.  I should have responded no, Your

12   Honor, not simply no.

13               THE COURT:  That's okay.

14               MR. LAMMERS:  Well . . .

15               THE COURT:  I didn't even pick up on it.

16               MR. WICHSER:  Your Honor, with the consent of my

17   client, we don't need to call Dr. Rogers.

18               THE COURT:  Okay.  Nick, would you make sure -- or,

19   Michelle, you want to run in and tell Jennifer to call him to

20   let him know he's not going to be called as a witness?  And I

21   don't know if she has his number or not, so maybe -- let's see.

22               THE CLERK:  We do, Your Honor.

23               THE COURT:  Okay.

24               MR. WICHSER:  Your Honor, out of an abundance of

25   caution since Dr. Rogers is not going to testify, I'm going to

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 4 of 33

```
 1   offer at this time Defendant's Exhibits A through D into

 2   evidence.  They've been previously marked.

 3                       *   *   *   *

 4        (Defendant Exhibits A through D were offered.)

 5                       *   *   *   *

 6        THE COURT:  Any objection?

 7        MR. LAMMERS:  No, Your Honor.

 8        THE COURT:  A through D are received.

 9                       *   *   *   *

10        (Defendant Exhibits A through D were admitted.)

11                       *   *   *   *

12        THE COURT:  And D -- is D his curriculum vita?

13        MR. WICHSER:  Yes.

14        THE COURT:  Okay.  Good.  Which I'm totally familiar

15   with.

16        Okay.  Why don't we hear argument first on your

17   departure issue because you have a departure issue that the

18   criminal history --

19        MR. WICHSER:  Yes.

20        THE COURT:  -- scoring of 31 substantially -- it's

21   even hard for me to say it with a straight face -- substantially

22   overrepresents the defendant's criminal history.

23        MR. WICHSER:  Your Honor, as I pointed out in my brief

24   on the issue, it's imperative that the Court examine the

25   historical significance of this defendant's criminal history
```

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 5 of 33

1    vis-a-vis when it occurred, what the nature of the offenses

2    were.  Most of his criminal history is derived from problems

3    that originated in the juvenile justice system.  And basically

4    they're a product of lack of strong upbringing and father

5    figure.  If you look at the actual offenses, even without a

6    career offender enhancement, he's still in a category 6.

7         THE COURT:  And he has nine different convictions that

8    aren't counted.

9         MR. WICHSER:  (Nodded head.)

10         THE COURT:  I do take you up on your invitation to

11    look at criminal history carefully.  I did that.  And I

12    counted -- including some charges where there are multiple

13    counts that he was convicted of, he's got 9 separate convictions

14    that actually were never counted in the 31 which is pretty

15    amazing considering his relatively young age.  I mean, to be at

16    a criminal history scoring of 31 and then have 9 more

17    convictions that actually didn't count, that's staggering.

18         MR. WICHSER:  And a lot of the points come from

19    problems with driving without a license, driving under a

20    suspended license, that type of offense.  There's very, very

21    little personal violence in his background.  The two big

22    convictions that count for the career offender occurred when he

23    was very young and involved a breaking into the store room of a

24    bar to steal beer, and the other was with an acquaintance

25    breaking into another acquaintance's apartment.  But there was

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 6 of 33

1  no personal violence involved in any of his criminal history

2  with the exception of some dismissed domestic problems.

3          THE COURT:  Well, that's not true.  He's got a

4  conviction in paragraph 39 for assault.  He has a conviction in

5  paragraph 50 for assault, and he has a conviction in paragraph

6  51 for assault.  So to say that he has no criminal history of

7  violence is just simply dead wrong.

8          MR. WICHSER:  These are in the nature, Your Honor, of

9  youthful fights.  That's basically what occurred.

10          THE COURT:  So there's a youthful fight exception to

11  violence.

12          MR. WICHSER:  No, no.  That's just the explanation for

13  the activity.

14          THE COURT:  Well, it's just -- it's almost beyond my

15  ability to grasp your argument that somebody with 31 criminal

16  history points can be substantially overrepresented in a

17  criminal history category 6.  I'm just having a very hard time

18  grasping that.

19          MR. WICHSER:  Overall, Judge, the thrust of the

20  argument is in this particular case there was very small

21  quantity of drugs involved in the case, but yet the punishment

22  is basically very, very severe.

23          THE COURT:  Well, it is very, very severe because he's

24  a career offender.  But that's really a different issue than --

25          MR. WICHSER:  Overstatement.

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 7 of 33

1     THE COURT:  -- than -- overstatement of criminal

2  history is a discrete issue.  It has nothing to do with the

3  offense of conviction, the facts of the offense of conviction.

4  It's just like -- I mean, it would take a Houdini to convince me

5  that 31 is really -- 31 is really 11 or is it 10 to get down to

6  a criminal history -- to go down one criminal history.  Yeah, 12

7  I guess.  Really what your argument is is 31 is really 12.

8  That's your argument; right?

9     MR. WICHSER:  Yes.  I'm asking the Court to go down.

10     THE COURT:  Well, that is awfully fuzzy math that 31

11  can become a 12.  I -- I mean, he's got a little bit of

12  everything.  He's got the burglaries, has the assault, prior

13  drug conviction and not off to a very good start.  In the very

14  first paragraph under his criminal history -- well, setting

15  aside paragraph 32 but just take paragraph 33, he has his

16  probation revoked, goes to prison, gets out on parole, then has

17  the parole revoked.  That's about as bad of a start as I've ever

18  seen.  Matter of fact, I'm not sure I've seen anybody who on

19  their first conviction had both probation and parole revoked.

20  And that's just the opening salvo, and it doesn't really get any

21  better.

22     I mean, I realize, yeah, he's got consumption,

23  intoxication, underage possession, but he doesn't get any

24  criminal history points for those.  And then you go to the

25  serious assault and then -- you know, I missed -- he's got a

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 8 of 33

1    willful injury conviction in paragraph 56.  So to say he doesn't

2    have -- I guess you want to just call it teenage fighting.  He's

3    got a demonstrated history and record of assaultive behavior.

4          Mr. Lammers, why don't you enlighten me.  What am I

5    missing here?

6          MR. LAMMERS:  Nothing.  I intended to point out

7    exactly what the Court just referred to in paragraph 56, for

8    example.

9          I guess charitably, I understood Mr. Wichser's

10   argument to be that most of his points came or a lot of his

11   points or a significant number of his points came from driving

12   and related charges, but I don't frankly think that matters when

13   he has enough points based on his assaultive conduct, based on

14   the fact that he was out of prison less than three weeks -- I

15   mean, let's -- let's put that in context.  He gets discharged

16   from his willful injury -- first of all, he gets paroled.  This

17   is in paragraph 56.  He gets paroled in 2007.  His parole's

18   revoked in June of 2008 which means he goes back to prison.  He

19   gets out October 28 of 2008, and November 13 of 2008, less than

20   3 weeks after he gets released, he's got 2 ounces of

21   methamphetamine and a pistol in his pocket.

22         There's nothing underrepresented in this man's

23   criminal history.  If you take a look at his criminal history,

24   from the time he was 13, he has been arrested every single year

25   with the exception of 2000 and 1995.  Those are the only two

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
Case 5:08-cr-04087-MWB-KEM   Document 84   Filed 07/16/09   Page 9 of 33
To purchase a complete copy of the transcript.

1 years he doesn't have a separate arrest and multiple arrests in

2 most of those years. And as the Court noted, he continually

3 gets his parole revoked, his probation revoked.

4 If you'd look at -- as I guess sort of term them the

5 less serious offenses where he got jail time, he gets his parole

6 revoked and he gets sent to jail. And I'm referring

7 specifically to paragraph 48, possession of a controlled

8 substance. It's not a parole. He got 128 days in jail, 90 days

9 suspended. Later in 2004 his probation was revoked and he got

10 90 days imposed. He doesn't stay clean or follow the rules on

11 any of the charges that he's gotten.

12 So I don't think the Court's missing anything here. I

13 don't think his criminal history is underrepresented at all, and

14 it certainly isn't substantially -- or excuse me,

15 overrepresented at all, and it certainly isn't substantially

16 overrepresented. It paints a very clear picture of exactly the

17 type of criminal conduct that he's engaged in since he was 13

18 years old.

19 THE COURT: If anything, it's substantially

20 underrepresented.

21 MR. LAMMERS: Right.

22 THE COURT: I mean, you look at -- I already focused

23 on his first adult conviction. But then you look at the number

24 of times he's had probation revoked: Paragraph 29, probation

25 revoked; paragraph 51, probation revoked; paragraph 53,

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM Document 34 Filed 07/16/09 Page 10 of 33

1    probation revoked; paragraph 56, parole revoked.

2          Well, Mr. Wichser, anything else you want to add on

3    your departure issue?

4          MR. WICHSER:  No, Your Honor.  I felt obligated to

5    make the argument and duty bound to do so, and I did.

6          THE COURT:  And that's fine.  There's this commercial

7    on the radio for refinancing mortgages, and the tag line is it's

8    the biggest no brainer in the history of earth.  This ruling is

9    the easiest no brainer in the history of earth from my way of

10   thinking.  I mean, I just -- like I said, I can't even fathom

11   the argument that 31 points is really 12 points given the

12   recidivist nature of the defendant's conduct.

13         As Mr. Lammers pointed out, there are only two years

14   in his adult life where he didn't actually commit a crime.  He

15   commits crimes repeatedly, has his probation and parole revoked

16   repeatedly, has no ability to conform his conduct to the

17   requirements of the law and is -- I mean, I know it's a little

18   trite, but if you looked up recidivism in the dictionary, his

19   picture would be next to it.  He's just -- he's as big a

20   recidivist for somebody his age as I've ever seen.  So I'm not

21   going to grant your motion for a departure.

22         Now, your variance motion is a little bit more

23   intriguing but runs into some of the same problems.  You have to

24   actually look at the facts of this case.  In the abstract, I

25   tend to agree with your variance argument.  But when you

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 11 of 33

1    actually apply it to the facts of this case, it doesn't seem

2    like it's the most appropriate case to raise the argument in,

3    but I understand you have a duty to raise it.  So why don't we

4    hear your argument on the downward variance.

5            MR. WICHSER:  Well, Your Honor, that argument proceeds

6    from a Kimbrough/Spears type of analysis because as the Court

7    said when it entered the courtroom, the thrust of the argument

8    is that because this career offender is not based upon empirical

9    data, I submit that the Court is -- doesn't need to give it much

10   deference because it's subject to the same analysis as the Court

11   made with the crack/powder disparity and also what the Court --

12   the arguments that the Court made in deconstructing the child

13   pornography guidelines.  It's basically the same thing.

14           This is -- this career offender is based basically

15   upon the commission's own interpretation of the statute, and

16   it's not really based upon any studies of recidivism or age

17   related to the crimes committed or that sort of thing.  And

18   because of that, it's just not entitled to that type of

19   deference, and the Court could vary downward on that reason

20   alone with a policy disagreement with the career offender

21   guideline as well as taking into consideration all of the

22   problems that were pointed out with this defendant in

23   Dr. Rogers' report which is an exhibit in this case.

24           He suffers from chronic depression based primarily on

25   lack of youthful guidance which under the guidelines was a

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 12 of 33

1  disfavored motion for a departure.  But as a variance I think

2  the Court can consider it.

3          Also he suffers from personality disorder which is, of

4  course, not typical.  He is able to be rehabilitated in the eyes

5  of Dr. Rogers.  He needs vocational training.  He also needs

6  extensive group and individual therapy, and for that reason I'm

7  going to ask the Court in the end to consider a recommendation

8  for a medical facility that would attend to Mr. Palomarez'

9  treatment.

10         And for all of the other reasons that I have outlined

11  in my written motion, I would ask the Court to consider a

12  sentence below the calculated advisory guideline range.

13         THE COURT:  Well, don't you actually have two kind of

14  distinct variance arguments?  Your one argument is that I should

15  not give the career criminal guideline as much weight as the

16  sentencing commission does or not give it any weight.

17         And then really unrelated to that, it seems to me, is

18  the 3553(a) factors, particularly the defendant's personal

19  background and family history, lack of parental guidance and

20  role models in the home and that type of thing.

21         MR. WICHSER:  Yes, Your Honor.

22         THE COURT:  Yeah.  Mr. Lammers?

23         MR. LAMMERS:  You can consider -- there's nothing

24  mandatory about the career offender guideline.  There's nothing

25  mandatory about any of the guidelines anymore, and you can vary

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 13 of 33

1  from the guideline, the career offender guideline as well.  I

2  fully understand that.

3      THE COURT:  The rationale of Spears and Kimbrough

4  would apply.

5      MR. LAMMERS:  Well, I don't know that Kimbrough

6  applies.  I don't know if Spears changes that.  And I'm

7  referring -- there's a case out of the Seventh Circuit that says

8  a sentence entered under the career offender guidelines 4B1.1

9  raises no Kimbrough problem because to the extent it treats

10 crack cocaine differently from powder cocaine, the disparity

11 arises from a statute, not from the advisory guidelines.

12      I don't know if Spears modified that when Spears was

13 decided or not.  It may have.  I don't know.  There's some

14 language in Spears that may potentially support, and there's

15 some language in Spears that goes the other way.  So I don't

16 know that we've got a Kimbrough problem.

17      But the case also says very specifically we don't mean

18 to imply that this guideline is any more mandatory or any less

19 advisory than any other guideline, and it says specifically that

20 the Court can vary from that advisory guideline.  I think you

21 can.

22      I don't know that necessarily this is the same as the

23 crack/powder disparity or it's the same as the child pornography

24 analysis based on the fact that this involves more of an

25 interplay of the statutory guidance of the career offender than

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 14 of 33
To purchase a complete copy of the transcript

1    I think maybe those others do since they're more sentencing

2    commission constructs than this is.  So I don't know that that

3    analysis is exactly the same.

4         I don't think it matters for our purposes today

5    because I think the Court recognizes that you can vary either

6    way, whether you're varying because you say I want to vary

7    solely on a policy guideline or you say I want to vary because

8    they're advisory only and I think a more reasonable sentence is

9    different.  So I don't think that particular analysis really

10   matters much here. And I would submit on the facts of this

11   particular case it really doesn't matter at all.

12        I can envision a situation where a court might look at

13   someone who's a career offender who has 2 prior burglary

14   convictions who's a criminal history category 2 or a criminal

15   history category 3 but because of these 2 prior burglary

16   convictions when he was a juvenile or just out of his juvenile

17   years that makes him a career offender and at that point you

18   might say, well, I have more of a policy disagreement in this

19   type of case.

20        That has no application in my view to this particular

21   defendant and the facts of this particular defendant's case.

22        THE COURT:  Because he has 31 criminal history points.

23        MR. LAMMERS:  Because he has 31 criminal history

24   points.  I think they were modified actually total to 28 because

25   some of them were counted pursuant to -- they were 1-point

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 15 of 33
To purchase a complete copy of the transcript

1   scoring and you can only count 4 of them, so I think he

2   actually -- the final score of his criminal history pursuant to

3   the presentence report I think is 28.  They started at 31 and

4   then said you can only count 4 points of that.  And I'm

5   referring now to -- excuse me.  I lost my paragraph.

6          THE COURT:  62.  No.  I think you're looking at

7   paragraph 59, but then if you look at 60 and 61, it goes back up

8   to a 31.

9          MR. LAMMERS:  That's right.  I'm sorry.  I was looking

10  at -- I was looking at 59.

11         THE COURT:  Right.  59 drops it to a 28, but then 60

12  and 61 -- 60, you have 2 points added because he was on parole

13  and 61 an additional point because it's less than 2 years

14  following the defendant's release from custody, so you're back

15  to a 31, so he actually does have a legitimate 31.

16         MR. LAMMERS:  You're absolutely right.  And I guess

17  that's an even stronger argument is 3 of the scored points

18  didn't actually score on top of the 9 unscored convictions that

19  didn't score.  And that's not even referring to -- and I'm not

20  asking the Court to use as part of its calculation all the

21  dismissed conduct, all the time where the police were called and

22  for whatever reason charges weren't pursued.

23         I just don't see a variance being appropriate based on

24  either the 3553(a) factors here.  And I understand that there is

25  potentially some support for the fact that, you know, he's got

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 16 of 33

1   some troubled upbringing and some difficult time with his mental
2   health history.

3           But if you'd look at Dr. Rogers' report, he says
4   that -- and this is on page 4 -- the profile indicated he's not
5   particularly impulsive or unable to control himself.  And then
6   it goes on to say he's not experiencing any thought disorder.
7   And I'm referring now, Your Honor, to the fifth paragraph.  But
8   he feels persecuted, downtrodden and depressed.

9           I don't know that that really provides a lot of
10  support to -- it's not like he has some sort of disease or
11  defect where he can't control his behavior.  I think actually
12  Dr. Rogers says just the opposite.  He is able to control his
13  impulses.  Does that mean he chooses not to?  That would be one
14  fair reading.

15          Now, obviously Dr. Rogers says he's got -- I think he
16  says antisocial personality disorder.  He says he didn't
17  specifically find it, but it's hard not to conclude that based
18  on his actions and his criminal history.  I'm not disputing that
19  he's got some mental health issues.

20          But I don't know that that outweighs in any sense his
21  continuous, ongoing, repeated criminal behavior from the time
22  he's 13 years old.  Just look at the 13-year-old offense, and
23  that didn't score either, and I don't ask the Court obviously to
24  score it.  But he goes to Eldora.  He's on the run from Eldora,
25  commits additional crime when he's on the run from Eldora.  Then

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 17 of 33

1   he gets arrested at 17 prior to his 18th birthday, so they had

2   to waive him up from juvenile court or because of the prior

3   placement in Eldora.  And there's kind of a tricky provision in

4   the Iowa Code where if somebody's been placed -- has had

5   out-of-home placement or been actually placed at Eldora that

6   certain types of crimes are automatically started in the adult

7   court after you turn 16.  That may be one of them.  I don't know

8   specifically.

9          But either way, at 17 years old, he finds himself in

10  adult court.  He ends up going to prison at 18 years old.  That

11  doesn't happen very often in the state of Iowa if you're not

12  committing a class B felony or some sort of mandatory minimum

13  offense or violent offense.

14         But he earned his way into prison because he wouldn't

15  do what he was told.  He had his probation revoked, and he ended

16  up going to prison.  And then he gets out, and he keeps

17  committing crime after crime after crime after crime.

18         I simply don't see how 3553(a), when you consider the

19  serious nature of his offense, when you consider the need to

20  impose a punishment, especially when you consider the need to

21  protect the community from further crimes of this man, I don't

22  see how his mental health issues outweigh any of those other

23  factors.

24         And I think it's especially important to focus on the

25  fact that three weeks after he's discharged from prison he's

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM  Document 34  Filed 07/16/09  Page 18 of 33

1    armed himself and he's involved in drug dealing.  That is

2    significant.

3           So based on those factors, I simply don't see a reason

4    to vary in this particular case.  I'm open to the possibility

5    that there are cases where a person would be a career offender

6    that a variance would certainly seem to be more warranted.  I

7    simply don't see it here.

8           THE COURT:  Mr. Wichser?

9           MR. WICHSER:  Your Honor, I would just like to clarify

10   because there's been on this record some confusion between why

11   Mr. Palomarez is considered a career offender.  It's not because

12   he has 31 criminal history points.

13           THE COURT:  No, I understand that.

14           MR. WICHSER:  Okay.

15           THE COURT:  It's --

16           MR. WICHSER:  It's because of the two burglary

17   convictions makes him a career offender.

18           THE COURT:  That's true.

19           MR. WICHSER:  Okay.

20           THE COURT:  There's no question about that.

21           MR. WICHSER:  Because when I was sitting here

22   listening to the arguments, there seemed to be -- the career

23   offender appeared to be driven by the 31 criminal history

24   points, and that's totally erroneous.

25           THE COURT:  That is erroneous because there's a very

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 19 of 33

1  specific way you become a career offender under the guidelines,

2  and I understand that.  But on the question of relief from that

3  guideline range, I'm free to consider the fact that he has 31

4  criminal history points.

5          MR. WICHSER:  Yes, yes.  I would agree with that.

6          THE COURT:  But that has nothing to do with why he's a

7  career offender.

8          MR. WICHSER:  No.

9          THE COURT:  You have to have the two predicate

10  felonies, either a crime of violence or a drug crime.

11          MR. WICHSER:  Yes.

12          THE COURT:  You think they might also make it a career

13  offender for somebody with 30 criminal history points, but they

14  chose not to do it.  But no.  I understand your argument.

15          Anything else you'd like to add?

16          MR. WICHSER:  No.  Thank you, Your Honor.

17          THE COURT:  Mr. Palomarez, you have the right to say

18  anything to me you want to before I impose sentence.  You don't

19  have to say anything.  You have a right to remain silent.  If

20  you exercise your right to remain silent, I will not hold it

21  against you in any way.  But if you'd like to say something, I'd

22  be happy to hear from you.  Is there anything you'd like to say?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.  Can you move that microphone a

25  little closer?  You can remain seated if you like.

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 20 of 33

THE DEFENDANT:  Okay.  Thank you.  In the last eight months I've been incarcerated, I've had a lot of time to reflect on my past, present, and future.  I feel bad that I hurt a lot of people, and I'm sorry that so many people have to take time out of their lives to focus on my wrongdoing.

I have made the most out of these eight months.  I have put myself in the shoes of every possible person I have affected from minimal to extreme.  There's nothing positive about my actions, and I know I have to make a lot of changes in my life.  I have written many facts about my life in my letter of allocution to you, Your Honor, and it all boils down to me growing up without guidance in my pattern of life that has hurt everyone around me including me.

I wish that someone in school or juvenile placement would have attempted to evaluate what was psychologically affecting me.  Instead, punishment after punishment to scare me straight, to learn my lesson.

I've never enjoyed being locked up because I am -- I never enjoyed being locked up.  I want to change.  I accept that I made this choice.  I acknowledge I broke the law, Your Honor. I saw I could make quick money and maybe catch up on a lot of time lost.  I know I wasn't cut out to be selling drugs.  I'm just not that smart and definitely not that lucky.  I accept punishment for my actions.  It is well deserved, but I ask for leniency because I am truly very sorry.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 21 of 33

```
 1              I had never truly been psychologically evaluated till
 2    I saw Dr. Rogers.  And I know that if I receive the help that
 3    Dr. Rogers recommends I can be productive in society and in the
 4    life of my son and many others I will reach for.  That's it,
 5    Your Honor.
 6              THE COURT:  Thank you.
 7              Mr. Lammers, anything else you'd like to add?
 8              MR. LAMMERS:  No.  Thank you, Your Honor.
 9              THE COURT:  Mr. Wichser, anything else you'd like to
10    add?
11              MR. WICHSER:  No, Your Honor.
12              THE COURT:  Okay.  I'm going to take a short recess,
13    meet with probation, and then come back and pronounce sentence.
14    Thank you.
15              (Recess at 3:36 p.m.)
16              THE COURT:  Thank you.  Please be seated.
17              Mr. Lammers, anything else you'd like to add?
18              MR. LAMMERS:  No thank you, Your Honor.
19              THE COURT:  Mr. Wichser?
20              MR. WICHSER:  No, Your Honor.
21              THE COURT:  Okay.  In this case I find on Count 1 and
22    Count 2 based on the interaction of the career criminal
23    guideline there's a United States Sentencing Guideline range of
24    262 to 327 months.  Count 2 is a 60-month consecutive sentence.
25              I have to rule on the defendant's motion for downward
```

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
Case 5:08-cr-04087-MWB-KEM Document 34 Filed 07/16/09 Page 22 of 33
To purchase a complete copy of the transcript.

1     variance.  I also have an independent obligation to review the

2     Title 18, 3553(a) factors to determine whether a variance is

3     appropriate.

4           And I think there are -- the mitigating factor that I

5     see would be the defendant's childhood and upbringing and lack

6     of role models and parental supervision.  And that's frequently

7     a factor that I use to vary downward from a guideline range to

8     impose a sentence that is less severe than the guidelines

9     impose.

10           But I also have an obligation to look at all of the

11     Title 18, 3553(a) factors.  And in looking at the history and

12     characteristics of the defendant, while the family circumstances

13     is a mitigating factor -- I think I might have said aggravating,

14     but I meant mitigating.  It's a mitigating factor, and I think

15     it's substantially mitigating.

16           But there -- the history and characteristics of the

17     defendant are substantially aggravating in the sense that not

18     only is he a career offender by virtue of the two paragraphs

19     identified in the presentence report, but there was a third

20     paragraph that would have qualified for the career offender, and

21     probation didn't need to use that because they had the two

22     burglaries.  But the willful injury paragraph would have

23     qualified.  So, I mean, he's a career offender to me by any

24     definition.

25           And it's just that he's committed a staggering amount

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM  Document 34  Filed 07/16/09  Page 23 of 33

1  of crime for 28 years old.  And if you take out the periods of
2  time you've been in jail or prison, you've committed I think
3  more crime in a shorter period of time than any defendant I've
4  sentenced in 15 years which would be over 2,500 defendants.  And
5  I just can't overlook that.
6         And not only have you committed all of those crimes,
7  but when you do get a chance to be on probation or parole, more
8  often than not you violate your probation and your parole.
9         And while I appreciate the fact that you said in your
10 allocution you've had time to think about things the last eight
11 months, you've had a lot of other opportunities to think about
12 things.  And your response has always been as soon as you get
13 out to commit another crime which was what happened in this
14 case.
15        And I also think 3553(a)(2), the need for the sentence
16 imposed, you are one of the rare individuals that I sentence
17 where the public actually needs protection from you.  Most of
18 the people I sentence are not apt to go out and commit other
19 crimes.  But the best indication of whether you're going to
20 commit future crimes is your past.  And that's really all you've
21 done.
22        And so I do feel a need to protect the public from
23 further crimes.  And it's not just that you have 31 criminal
24 history points, but you have the whole package.  I mean, you
25 have a drug offense.  You have a weapons offense.  You have

1    assaultive behavior multiple times.  And so the public does need

2    protection from that.

3            And so when I balance all of the 3553(a) factors, I'm

4    not going to grant a variance in this case, at least a downward

5    variance.  I think I'd be well within my discretion to go above

6    the 327 months, but I'm not going to do that.  I'm not even

7    going to sentence you at the high end of the guideline range.

8    I'm going to sentence you -- because ultimately I do try and

9    give people the benefit of the doubt, even people who have

10   multiple convictions.  So I'm going to sentence you to 202

11   months on Count 1 and 60 months consecutive on Count 2 for a

12   total punishment of 262 months which is the low end of your

13   guideline range.

14           I recognize that I have discretion to vary from the

15   guideline range, but in this case I do not believe it would be

16   appropriate to exercise that discretion downward.  So I have not

17   done so.

18           So my guideline calculations are total offense level

19   31, criminal history category 6, and that's an advisory

20   guideline range of 188 to 235 months.  However, the guideline

21   range established by the career criminal guideline 4B1.1(c)(3)

22   results in a greater guideline range, and that's how I got to

23   the 262 to 327 months.

24           I am going to recommend the 500-hour comprehensive

25   residential drug treatment program.

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 25 of 33

1    And is there a facility you'd like me to recommend,

2    Mr. Wichser?

3    MR. WICHSER:  Yes, Your Honor.  The defendant would

4    respectfully request placement at the federal medical facility

5    in Rochester or, in the alternative, Oxford, Wisconsin.

6    THE COURT:  Okay.  I'm going to recommend Oxford,

7    Wisconsin, to the Bureau of Prisons or another facility as close

8    to his residence as possible consistent with his custody and

9    security classification.

10   Upon release from imprisonment, you'll be on

11   supervised release for 4 years on Count 1 and 3 years on Count 2

12   to run concurrently.

13   While you're on supervised release, you can't violate

14   any state, local, or federal law.  You can't possess a firearm,

15   ammunition, or other destructive device.  You'll cooperate in

16   the collection of a DNA sample.

17   You can't violate any state, local, or federal law.

18   You'll never be allowed to possess a firearm or ammunition

19   unless you petition the Bureau of Alcohol, Tobacco, Firearms,

20   and Explosives to have your rights restored.

21   You'll have the standard conditions of supervised

22   release and the following special conditions:  You'll

23   successfully complete a program of testing and treatment for

24   substance abuse as directed by your probation officer.

25   You're prohibited from using alcohol and going to

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 26 of 33

1  bars, taverns, and other establishments whose primary source of

2  income is derived from the sale of alcohol.

3       You cannot knowingly associate with any member of a

4  gang while you're on supervised release.

5       You'll also participate in mental health treatment and

6  evaluation as recommended by your probation officer.  And you're

7  subject to the standard search condition.

8       You don't have ability to pay a fine, so the fine is

9  waived.  There's a special assessment of $200 due and owing.

10 You are remanded to the custody of the United States marshal to

11 serve this sentence.

12      You have a right to appeal the sentence that I've

13 imposed.  If you decide to appeal, you need to file a written

14 notice of appeal with the clerk of our court within ten days

15 from the date I sign your judgment.  If you can't afford to pay

16 for a lawyer or pay the costs of an appeal, those costs will be

17 paid on your behalf.

18      Mr. Palomarez, this was a very difficult sentence for

19 me to impose.  I did give it a lot of consideration.  But in the

20 end I think you have to be accountable for your own conduct.

21 And that's what kind of persuaded me.

22      It's hard for me not to give somebody a break.  I've

23 given more breaks than probably any federal district court judge

24 in the country in sentencing.  And you had a very, very nice

25 allocution, and you're very well spoken, and you sound like a

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM Document 34 Filed 07/16/09 Page 27 of 33

      1   very intelligent young man to me.  And so it was very hard for

      2   me to give this sentence.  But I have to balance society's

      3   interests too, and I tried to do that to the best of my ability.

      4        So good luck to you.  I hope the time passes as

      5   quickly for you as you can.  And I hope you can take advantage

      6   of some of the opportunities which are somewhat limited in the

      7   Bureau of Prisons.

      8        And you do have a lot of family support, and that's a

      9   very wonderful thing.  I already said I've sentenced over 2,500

     10   people to federal prison.  And in my first year back in 1994, I

     11   was sentencing a woman from Sioux City.  And when I read her

     12   presentence report, I noticed that she had ten brothers and

     13   sisters and they all lived in the area.  And her parents were

     14   still alive.

     15        And I came out to sentence her in this courtroom.  And

     16   there wasn't a single person in the back.  She had five prior

     17   convictions, and the family had given up on her.  Your family

     18   hasn't given up on you, and that's a good thing.  They shouldn't

     19   give up on you because you're family and you're loved by them,

     20   and you have potential.  And so I just hope you can maximize

     21   that potential and make the most of things.  And good luck to

     22   you.

     23        Is there anything -- oh, and I'll ask the U.S.

     24   marshals, Chad, if you can accommodate a family visitation.

     25        MR. WICHSER:  Thank you, Judge.

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM  Document 34  Filed 07/16/09  Page 28 of 33

```
 1            THE COURT:  Mr. Wichser, is there anything further?
 2            MR. WICHSER:  No, Your Honor.
 3            THE COURT:  Mr. Lammers, is there anything further?
 4            MR. LAMMERS:  There's something I don't think we
 5    addressed, and I should have brought it up earlier.  We're not
 6    making a substantial assistance motion in this case.  I think we
 7    went right into the variance.  I think pursuant to our plea
 8    agreement that I am -- that I should tell the Court, whether we
 9    make the motion or don't make the motion, the nature of the
10    defendant's assistance.  I can briefly do that.
11            THE COURT:  Is there any chance of a Rule 35(b)
12    motion?
13            MR. LAMMERS:  Well, there is a potential for a Rule
14    35(b) motion.  I told Mr. Wichser that.  The defendant gave us
15    information on one specific target who I am interested in.  We
16    have some things to clarify with the defendant potentially
17    before we're able to use him.  But there is a potential.
18            But his -- the nature of his assistance is -- again, I
19    think I'm required by the plea agreement to identify that to the
20    district court -- is that he gave a post-Miranda statement and
21    then a proffer interview.  We didn't use his information in --
22    we didn't use him in grand jury.  He didn't support any search
23    warrants.  He didn't do any active work.  We simply haven't been
24    able to use his information at this point, but I think that I
25    needed to make that of record.  So I'm sorry I didn't bring it
```

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 29 of 33

1  up earlier.

2          THE COURT:  Okay.  And if you had told me that before,

3  it wouldn't have affected my sentencing decision.  But I think

4  it would be appropriate to tell Mr. Palomarez about the

5  possibility of a Rule 35(b) motion and what can happen.

6          MR. LAMMERS:  I agree.

7          THE COURT:  Okay.  This is actually good news for you.

8  There wasn't much good news this afternoon for you, but here's a

9  little piece that should make your entire family and you

10  somewhat hopeful.

11          There's an opportunity based on the information that

12  you provided that the government may seek to charge somebody.

13  And if you continue to provide substantial assistance, for

14  example, maybe testifying in front of the grand jury, they would

15  bring you back from prison to do that or they could -- the U.S.

16  Attorney's Office could if they wanted to, maybe testify at the

17  person's detention hearing, trial, sentencing.

18          If you were to continue to provide substantial

19  assistance, the U.S. Attorney's Office could make what we call a

20  Rule 35(b) substantial assistance motion.  And that means that

21  you would come back before me for sentencing.  We usually do it

22  by telephone, so you wouldn't necessarily be in person.  But

23  then I'd have an opportunity to reduce your sentence based on

24  any substantial assistance that you provided to the government.

25          And nothing I've said today would preclude me from

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.

Case 5:08-cr-04087-MWB-KEM   Document 34   Filed 07/16/09   Page 30 of 33

reducing your sentence if you provided substantial assistance.
It's like apples and oranges. We had the apples today. The
oranges would be a substantial assistance motion. And I
wouldn't hold it against you in any way that you had 31 criminal
history points or any of the other factors that I used when I
decided not to reduce your sentence today. I would look at a
new set of factors. It's basically the timeliness of your
assistance; whether it's truthful, complete, and reliable; how
useful it was to the government; how useful I found the
substantial assistance to be.

And of all of those factors, the number-one thing is
whether I think you've been a hundred percent truthful in
cooperating against another individual. If I find you've been a
hundred percent truthful and the U.S. Attorney's Office makes
the Rule 35(b) motion, then I can't think of any reason why I
wouldn't reduce your sentence.

But if I find that you aren't being a hundred percent
truthful, two things are most likely to happen. One, I wouldn't
reduce your sentence at all, and I have the discretion to do it,
and I've done that on occasion where I didn't find people's
cooperation to be truthful. Or two, I would reduce it but not
very much if I didn't think you were a hundred percent truthful.
And the burden's on you to convince me that you've been a
hundred percent truthful in your cooperation.

So that's really your only hope of getting your

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM Document 34 Filed 07/16/09 Page 31 of 33

1   sentence reduced.  And Mr. Wichser can't make that Rule 35

2   motion on your behalf.  I can't make it on your behalf.  Only

3   the U.S. Attorney's Office can make that on your behalf.

4           But like I said, if they do make that motion on your

5   behalf and you're a hundred percent truthful, there's no reason

6   I know of -- there are no guarantees or promises, but there's no

7   reason I know of as I sit here today why I wouldn't reduce your

8   sentence.  And, you know, I've given reductions as low as 5

9   percent up to 65 or 70 percent depending upon my analysis of

10  those 5 factors.

11          And so, you know, if they do make the motion, then

12  there will be an opportunity to reduce your sentence.  And if

13  you're truthful, I wouldn't have any hesitation in reducing your

14  sentence.  Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Okay.  I hope I have the opportunity to

17  have you back in front of me and reduce your sentence.  I would

18  like to have that opportunity.

19          THE DEFENDANT:  Me too, Your Honor.

20          THE COURT:  Okay.  And I'm sure you'd like me to have

21  that opportunity, and I know your family would too.

22          Mr. Wichser, is there anything further?

23          MR. WICHSER:  No, Your Honor.

24          THE COURT:  Mr. Lammers?

25          MR. LAMMERS:  No.  Thank you, Your Honor.

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 5:08-cr-04087-MWB-KEM Document 34 Filed 07/16/09 Page 32 of 33

1          THE COURT:  Okay.  Thank you for raising that issue.

2    We'll be in recess.

3          (The foregoing sentencing was

4          concluded at 4:03 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                    CERTIFICATE

21          I certify that the foregoing is a correct transcript

22    from the record of proceedings in the above-entitled matter.

23

24

25    _____          7-10-09
          s/ Shelly Semmler
          Shelly Semmler, RMR, CRR                Date

Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
To purchase a complete copy of the transcript
Case 5:08-cr-04087-MWB-KEM  Document 34  Filed 07/16/09  Page 33 of 33